UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

In re:                                              )
                                                    )
RENT-RITE SUPER KEGS WEST LTD.,    )   Case No. 12-31592 HRT
                                                    )
Debtor.                                         )   Chapter 11
                                                    )

### ORDER ON MOTION TO DISMISS

This case comes before the Court on *Secured Creditor VFC Partners 14 LLC's Motion to Dismiss* (docket #31) (the "Motion").

The Debtor's business involves a continuing violation of the federal Controlled Substances Act. *See* 21 U.S.C. §§ 801-904. Debtor candidly acknowledges that it derives roughly 25% of its revenues from leasing warehouse space to tenants who are engaged in the business of growing marijuana. This activity – arguably legal[1] under Colorado law – forms the basis for the instant Motion filed by VFC Partners 14 LLC ("VFC"). VFC seeks dismissal of this case under the "clean hands doctrine" and argues that Debtor's activities, which the Court finds to be illegal under federal law, make it unworthy of the equitable protection of the bankruptcy court. In addition, VFC argues that Debtors' case was filed in bad faith and should be dismissed on that basis.

At the preliminary hearing on November 27, 2012, the parties confined their arguments to the legal issue of whether the case must be dismissed under the clean hands doctrine.

### I. FACTUAL BACKGROUND[2]

1.  This case was filed on October 18, 2012.

---

[1] The Court has not heard evidence with respect to the details of the growing operations conducted by Debtor's tenants and makes no findings with respect to their compliance with the Colorado Medical Marijuana Code. COLO. REV. STAT. §§ 12-43.3-101 to 1001. For the purposes of this Order only, the Court assumes that Debtor's activities are lawful under Colorado state law.

[2] The Court only heard legal argument at the preliminary hearing. With the exception of the Debtor's acknowledgment that it leases warehouse space to tenants who use the space to cultivate marijuana, the facts recited herein do not constitute the Court's finding of fact but are included as background information only.

ORDER ON MOTION TO DISMISS
Case No. 12-31592 HRT

2. The Debtor owns a warehouse building located at 3850 to 3900 E. 48th Avenue, Denver, Colorado (the "Warehouse"). Debtor values the property at $2.3 million.

3. On July 22, 2005, Debtor executed a promissory note to Commercial Federal Bank, FSB, in the face amount of $1.8 million (the "Note"). That obligation is secured by a Deed of Trust, Assignment of Rents and Security Agreement dated April 6, 2001, and modified on July 22, 2005, granting Commercial Federal a lien on the Debtor's Warehouse including rents and personal property (the "Deed of Trust").

4. On December 21, 2011, the Note and Deed of Trust were assigned to VFC.

5. Approximately 25% of the Debtor's income is produced from leasing space in the Debtor's Warehouse to tenants who use that space for the cultivation of marijuana.

## II. DISCUSSION

A. Debtor's Business Operations Violate the Controlled Substances Act

For the reasons that follow, the Court concludes that the Debtor engages in conduct that, while legal under Colorado law, violates the federal Controlled Substances Act ("CSA").

The CSA has been described by the United States Supreme Court as "a lengthy and detailed statute creating a comprehensive framework for regulating the production, distribution, and possession of five classes of 'controlled substances.'" *Gonzales v. Raich*, 545 U.S. 1, 24 (2005). Under the CSA, marijuana is classified as a Schedule I controlled substance. 21 U.S.C. § 812 Schedule I(c)(10). When a substance is placed on Schedule I, that represents a legislative judgment that "[t]he drug or other substance has a high potential for abuse; . . . [t]he drug or other substance has no currently accepted medical use in treatment in the United States; [and] . . . [t]here is a lack of accepted safety for use of the drug or other substance under medical supervision." 21 U.S.C. § 812(b)(1). "Under the CSA, any person who seeks to manufacture, distribute, or possess a Schedule I controlled substance must apply for and obtain a certificate of registration from the Drug Enforcement Agency (DEA). *Monson v. Drug Enforcement Admin.*, 522 F.Supp.2d 1188, 1192 (D. N.D. 2007) (citing 21 U.S.C. §§ 822-23). At hearing, the Debtor did not argue that any of its tenants, whose operations are at issue here, are operating under DEA approval.

Under § 856 of the CSA, it is a federal crime to

> manage or control any place, . . . as an owner, . . . and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

21 U.S.C. § 856(a)(2).[3]

Debtor freely admits that it leases Warehouse space to tenants who use the space for the cultivation of marijuana. The Court, therefore, finds that the Debtor is engaged in an ongoing criminal violation of the federal Controlled Substances Act.

The Debtor argues the law is in flux. Under state law in Colorado, it is legal to cultivate and distribute marijuana for medical purposes. COLO. CONST. art. XVIII, § 14; COLO. REV. STAT. §§ 12-43.3-101 to -1001. Voters recently took marijuana legalization a step further and passed, by referendum, Amendment 64 to the Colorado Constitution, which legalizes the recreational production and sale of marijuana and possession of up to one ounce of marijuana. COLO. CONST. art. XVIII, § 16.

That there is a sharp difference between state and federal law where the growing of marijuana is concerned does not make the controlling law unsettled or ambiguous. The Debtor cannot reasonably argue that legalization of marijuana cultivation on the state level nullifies the provisions of the CSA.

The Court has considered the extent to which it is necessary to determine whether the CSA preempts the provisions of Colorado state law under the Supremacy Clause of the United States Constitution. U.S. CONST., art VI, cl. 2. The Supremacy Clause provides that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." *Id*. This case does not present an issue of federal preemption.

The United States Supreme Court has had many opportunities to construe the Supremacy Clause. It recently said that

---

[3] Section 856 is known as the "crack house statute." *U.S. v. Miller*, 698 F.3d 699, 705 (8th Cir. 2012). It is, perhaps, harsh that a statute aimed at controlling crack houses is written so broadly that it embraces the Debtor's conduct. The Court has no evidence before it that suggests Debtor's activities have anything in common with the evil that § 856 of the CSA was purportedly written to combat.

ORDER ON MOTION TO DISMISS
Case No. 12-31592 HRT

> Congress may, of course, expressly pre-empt state law, but "[e]ven without an express provision for preemption, we have found that state law must yield to a congressional Act in at least two circumstances." First, "state law is naturally preempted to the extent of any conflict with a federal statute." Second, we have deemed state law pre-empted "when the scope of a [federal] statute indicates that Congress intended federal law to occupy a field exclusively."

*Kurns v. Railroad Friction Products Corp.*, 132 S. Ct. 1261, 1265-66 (2012) (quoting *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000); *Freightliner Corp. v. Myrick*, 514 U.S. 280 (1995)).

Here, Congress has expressly disclaimed any intention to preempt state police powers in the CSA by occupying the field with respect to the area of recreational drug use. It provides that

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

21 U.S.C. § 903. Section 903 removes any concerns with respect to field preemption and explicitly restricts any question of preemption to those cases where a "positive conflict" exists between the provisions of the CSA and state law. A "positive conflict" my be found to exist between state law and federal law where "it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.*, 537 U.S. 51, 64 (2002) (internal quotation marks and citations omitted).

But conflict preemption is not an issue here. Colorado constitutional amendments for both medical marijuana, COLO. CONST. art. XVIII, § 14, and the more recent amendment legalizing marijuana possession and usage generally, COLO. CONST. art. XVIII, § 16, both make it clear that their provisions apply to state law only.[4] Absent from either enactment is any effort

---

[4] *See, e.g.,* COLO. CONST. art. XVIII, § 14(2)(a) ("[A] patient or primary care-giver charged with a violation of the *state's criminal laws* related to the patient's medical use of marijuana will be deemed to have established an affirmative defense to such allegation . . . .") (emphasis added); COLO. CONST. art. XVIII, § 14(2)(e) (Any . . . property interest shall not be forfeited *under any provision of state law* providing for the forfeiture of property other than as a
(continued...)

to impede the enforcement of federal law. *See, e.g., Ter Beek v. City of Wyoming*, 297 Mich. App. 446, ___ N.W. 2d ___ (Mich. Ct. App. 2012) (Concluding that Michigan Medical Marijuana Act did not hinder enforcement of federal CSA because it only granted immunity from prosecution under state law).

Federal preemption is not an issue because no part of the Colorado law must give way in order for federal authorities to fully enforce the CSA. The fact that there is a difference in legislative philosophy creates no conflict that requires an analysis of federal preemption under the Supremacy Clause. That marijuana cultivation may not be criminally prosecuted under the laws of the state of Colorado is simply of no consequence and has no bearing on the Court's finding that Debtor's business operation constitutes a continuing criminal violation of the federal Controlled Substances Act.

Debtor points out that federal authorities have never notified it that it is in violation of the law and that it has never been charged or convicted of any federal or state crime. But the fact that a violator is never charged, tried or convicted does not change the fact that the crime has been committed.

In light of Colorado's laws and constitutional amendment legalizing marijuana, federal prosecutors may well choose to exercise their prosecutorial discretion and decline to seek indictments under the CSA where the activity that is illegal on the federal level is legal under Colorado state law. Be that as it may, even if the Debtor is never charged or prosecuted under the CSA, it is conducting operations in the normal course of its business that violate federal criminal law. *See, e.g., U.S. v. Stacy*, 34 F. Supp.2d. 1074, 1078-81 (S.D. Cal. 2010) (criminal defendant cannot rely on public statements of non-prosecution policy issued by administration officials or justice department). Unless and until Congress changes that law, the Debtor's operations constitute a continuing criminal violation of the CSA and a federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime.[5]

---

[4](...continued)
sentence imposed after conviction of a criminal offense or entry of a plea of guilty to such offense.") (emphasis added); COLO. CONST. art. XVIII, § 16(3) ("[T]he following acts are not unlawful and shall not be an offense *under Colorado law or the law of any locality within Colorado . . . .*") (emphasis added).

[5] This is not to suggest that a Colorado state court would view the controlling law differently or that the federal system has any greater interest than the state in insuring its courts are not used to aid in the commission of a criminal offense.

B. VFC's Collateral is at Risk

Due to the Debtor's ongoing criminal activity under the CSA, VFC's collateral is placed at risk of forfeiture. The criminal penalty applicable to a violation of subsection (a) of 21 U.S.C. § 856 is "a term of imprisonment of not more than 20 years or a fine of not more than $500,000, or both, or a fine of $2,000,000 for a person other than an individual." 21 U.S.C. § 856(b). Because the Debtor is committing an ongoing criminal violation that is punishable by a prison sentence of more than one year, the forfeiture statute comes into play. "All real property . . . which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of [the Controlled Substances Act] punishable by more than one year's imprisonment" is subject to forfeiture. 21 U.S.C. § 881(a)(7). Thus, VFC's collateral is at risk. Moreover, under 11 U.S.C. § 362(b)(b)(4), the automatic stay does not enjoin governmental entities against actions that constitute an exercise of governmental police powers. *See, e.g., In re WinPar Hospitality Chattanooga, LLC.*, 404 B.R. 291, 296 (Bankr. E.D. Tenn. 2009) (Title 11 U.S.C. § 362(a) did not stay civil forfeiture action under 18 U.S.C. § 981 to seize $7.2 million proceeds from estate's sale of the debtor's only asset – a piece of real estate subject to forfeiture because it was purchased with the proceeds of criminal activities.).

The Debtor might argue that any such risk is highly theoretical, speculative and remote. As a practical matter, the Court suspects that is true. Yet, the Court cannot use the adjudicative authority granted to it by Congress to force VFC to bear even a highly improbable risk of total loss of its collateral in support of the Debtor's ongoing violation of federal criminal law.

C. The "Clean Hands Doctrine" is Applicable to Bankruptcy Proceedings

The simple act of filing a voluntary bankruptcy petition invokes protections under the Bankruptcy Code including the automatic stay. 11 U.S.C. § 362. The protections invoked by a debtor by filing a bankruptcy petition are enforced by the bankruptcy courts. 28 U.S.C. § 1334.

Traditionally, bankruptcy courts are regarded as courts of equity. *See, e.g. Young v. U.S.*, 535 U.S. 43, 49-50 (2002); *U.S. v. Energy Resources Co., Inc.*, 495 U.S. 545, 549 (1990) ("[B]ankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships."); *Pepper v. Litton*, 308 U.S. 295, 304 (1939) ("for many purposes 'courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity'") (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 240 (1934)). Nonetheless, a bankruptcy court's equitable powers "must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988).

The Debtor seeks to reorganize its financial affairs under the shelter of the Bankruptcy Code. A reorganization under chapter 11 affords a debtor the protection of the automatic stay in order for the debtor to use that breathing spell to formulate its reorganization plan. The Court's power to adjust the debtor-creditor relationship in the process of confirming a plan of

reorganization goes to the essence of the Court's equitable jurisdiction and requires the Court to look to equitable factors to determine the propriety of the Debtor's filing.

In the case of *Marrama v. Citizens Bank*, 549 U.S. 365 (2007), the Supreme Court held that the bankruptcy court's equitable powers, as set out in 11 U.S.C. § 105(a), were sufficient authority to deny a debtor's request to convert his case from chapter 7 to chapter 13. The debtor in that case had fraudulently under-reported his assets in his schedules and he sought the conversion after the chapter 7 trustee determined that the debtor owned assets that could be administered in the chapter 7 case. Despite the fact that 11 U.S.C. § 706 contains no qualification of the right to convert to chapter 13, except that the debtor must be eligible to be a debtor under that chapter, the Supreme Court deemed the debtor's bad faith to be sufficient to invoke the bankruptcy court's equitable powers and to disallow the conversion. *Id*. at 375.

> "[T]he equitable maxim that 'he who comes into equity must come with clean hands' . . . closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief . . . . That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. . . . '[E]quity does not demand that its suitors shall have led blameless lives,' as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue."

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814-15 (1945) (citations omitted). Thus, as a court that utilizes equitable principles, this Court, like the bankruptcy court in *Marrama*, recognizes that a debtor's bad faith – in this case, the Debtor's criminal violation – in suitable cases will result in a denial or a limitation of the relief a debtor may hope to be granted.

The Court finds that the Debtor's misconduct is of such a nature to justify the application of the clean hands doctrine. "[O]ne's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the [clean hands] maxim by the chancellor." *Id*. at 15. The Debtor freely admits that it leases space to those who are engaged in the cultivation of marijuana. Even if the Debtor's holds a good faith – albeit misguided – belief that Colorado state law would prevail over the federal law or that the federal law is unlikely to be enforced, that is quite beside the point. The Debtor has knowingly and intentionally engaged in conduct that constitutes a violation of federal criminal law and it has done so with respect to its sole income producing asset. Worse yet, every day that the Debtor continues under the Court's protection is another day that VFC's collateral remains at risk.

ORDER ON MOTION TO DISMISS
Case No. 12-31592 HRT

D. 11 U.S.C. § 1112

VFC argues for application of the clean hands doctrine to bar the Debtor's bankruptcy filing. But any equitable doctrine the Court applies is always done strictly within the confines of the Bankruptcy Code's statutory scheme. *See, generally, Ahlers*, 485 U.S. at 206.

Title 11 U.S.C. § 1112(b) provides the statutory framework for dismissal or conversion of a chapter 11 case. It provides in relevant part, that

> (b)(1) . . . after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
>
> . . .
> (4) For purposes of this subsection, the term 'cause' includes–
>     (A)   substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>     (B)   gross mismanagement of the estate;
>     (C)   failure to maintain appropriate insurance that poses a risk to the estate or to the public;
>     (D)   unauthorized use of cash collateral substantially harmful to 1 or more creditors;
>     (E)   failure to comply with an order of the court;
>     (F)   unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>     (G)   failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
>     (H)   failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
>     (I)   failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
>     (J)   failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
>     (K)   failure to pay any fees or charges required under chapter 123 of title 28;
>     (L)   revocation of an order of confirmation under section 1144;
>     (M)   inability to effectuate substantial consummation of a confirmed plan;
>     (N)   material default by the debtor with respect to a confirmed plan;

ORDER ON MOTION TO DISMISS
Case No. 12-31592 HRT

> (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
>
> (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.
>
> . . .

11 U.S.C. § 1112(b).

The statute sets out a two step process. First, the Court must determine if "cause" exists for dismissal or conversion of the chapter 11 case. Next, the Court must determine whether dismissal or conversion of the case is in the best interests of creditors and the estate. *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 242 (4th Cir. 1994).

A finding of "cause" in any context is, at bottom, an equitable determination. Congress specifically understood, in drafting § 1112(b)'s list of factors that a court may consider in its determination of "cause" for dismissal or conversion, that it was not restricting a court's ability to consider other factors that are not enumerated there. The legislative history to § 1112 states that

> Subsection (b) gives wide discretion to the court to make an appropriate disposition of the case when a party in interest requests. . . . The list [appearing in § 1112(b)] is not exhaustive. The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.

H.R. REP. NO. 95-595 at 406, 1978 U.S.C.C.A.N. 5963, 6362. It is, therefore, appropriate for the Court to give consideration, in addition to the enumerated factors in § 1112(b), to VFC's equitable clean hands argument.

*1) 11 U.S.C. § 1112(b)(4)(B)*

Where a court finds "gross mismanagement of the estate" by a debtor, that finding compels a conclusion that "cause" exists for dismissal or conversion of the chapter 11 case. 11 U.S.C. § 1112(b)(4)(B). In this case, the Court finds gross mismanagement. The Debtor has freely acknowledged that it engages in conduct that exposes the Debtor to criminal liability and that exposes its primary asset to forfeiture. It acknowledges that its criminal behavior has continued post-petition. The fact that it engaged in this conduct and entered into the leases with its tenants pre-petition does not constitute mismanagement of the estate because the estate is a post-petition entity. However, the Debtor entered its bankruptcy case with the offending leases in place and has maintained those leases during the pendency of its chapter 11 bankruptcy case. It is that post-petition presence of activity on the Debtor's property – pursuant to leases that it

knowingly entered into – that violates the CSA; exposes the Debtor to criminal liability; and exposes both the Debtor and its mortgage creditor to forfeiture of the Warehouse that constitutes gross mismanagement of the estate and requires the Court to either convert this case to a case under chapter 7 or to dismiss it.

### 2) Debtor's Lack of Clean Hands

Whether it is characterized, strictly speaking, as an application of the clean hands doctrine or simply as part of the Court's totality of the circumstances "cause" analysis, the Debtor's continued criminal activity satisfies the requirement of "cause" under § 1112(b) and requires dismissal or conversion of this chapter 11 bankruptcy case. As detailed above, the Court finds that the Debtor is engaged in an ongoing criminal violation of the CSA.

Title 11 U.S.C. § 1129(a)(3) provides that a plan may only be confirmed if it is "proposed in good faith and not by any means forbidden by law." Because a significant portion of the Debtor's income[6] is derived from an illegal activity, § 1129(a)(3) forecloses any possibility of this Debtor obtaining confirmation of a plan that relies in any part on income derived from a criminal activity. This Debtor has no reasonable prospect of getting its plan confirmed. Even if § 1129 contained no such good faith requirement, under no circumstance can the Court place itself in the position of condoning the Debtor's criminal activity by allowing it to utilize the shelter of the Bankruptcy Code while continuing its unlawful practice of leasing space to those who are engaged in the business of cultivating a Schedule I controlled substance.

### 3) Best interests of Creditors and of the Estate

The Court has found that "cause" exists for dismissal or conversion of the Debtor's case. Once a court finds "cause" for dismissal or conversion of a chapter 11 case, it must determine whether dismissal is in the best interests of the creditors and of the estate or whether conversion of the case better serves those interests. 11 U.S.C. § 1112(b)(1). The record before the Court is not sufficient for the Court to make that determination.

When it analyzes the best interests of creditors and the estate under § 1112(b)(1), the Court would normally look to the assets that may be available for distribution and balance the creditors' reasonable expectation of a distribution in a chapter 7 case against the inevitable race to the courthouse by individual creditors to obtain judgments and chase assets to execute on. *See, e.g. Rollex Corporation v. Assoc. Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 243 (4th Cir. 1994) ("The inquiry for [the best interests] element cannot be completed

---

[6] To be clear, the Court does not suggest there is some less significant portion of a Debtor's income that may be derived from illegal activity and that might pass muster under § 1129(a)(3).

without comparing the creditors' interests in bankruptcy with those they would have under state law.").[7]

The Court has reviewed the Debtor's schedules. The Debtor lists the value of its Warehouse at $2.3 million. It lists the value of its personal property at $1.5 million. The debt to VFC, its primary secured creditor, is around $1.7 million. Debtor shows approximately $50,000.00 of secured real property tax claims but shows no priority unsecured debt. The Debtor's schedule of non-priority unsecured debt runs to 18 pages or approximately 120 creditors and lists debts that total approximately $1.1 million. On the face of the Debtor's schedules, Debtor reports substantial equity in property that may be used for the payment of creditors.

In a more mundane case, that might be the end of the analysis. But here, the Court must also consider whether consequences of the Debtor's criminal conduct impact the ability of a chapter 7 trustee to administer a chapter 7 estate. There have been no motions filed in this case seeking abandonment or stay relief with respect to the Debtor's Warehouse. Therefore, immediately upon conversion, the chapter 7 estate would contain a major asset that is the location of ongoing criminal activity and is subject to forfeiture under the CSA. The trustee who is appointed in the case would have responsibility for a site where continuing criminal conduct is taking place. That raises a question of the feasibility of chapter 7 estate administration and is an issue on which the United States Trustee is likely to want to provide input.

---

[7] Collier suggests a much more expansive list of factors to be considered.
(1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal, (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted, (3) whether the debtor would simply file a further case upon dismissal, (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors, (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise, (6) whether any remaining issues would be better resolved outside the bankruptcy forum, (7) whether the estate consists of a "single asset," (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests, (9) whether a plan has been confirmed and whether any property remains in the estate to be administered, and (10), whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.
7 COLLIER ON BANKRUPTCY ¶1112.04[7] (16th ed.).

ORDER ON MOTION TO DISMISS
Case No. 12-31592 HRT

E.  The Final Hearing

      At the preliminary hearing in this matter the Court heard legal argument.  The thrust of the parties arguments went to the "cause" prong of the § 1112(b) analysis and the Court has been able to make its determination that "cause" exists for dismissal or conversion of the case.  However, the Court finds that the record it has before it does not allow it to make the determination of whether dismissal or conversion is in the best interests of the creditors and the estate.

      The Court reserved Tuesday, January 22, 2013, as a final hearing date in the event that it could not fully resolve the pending Motion based on the legal argument presented at the preliminary hearing.  The Court will use that date to hear evidence and argument with respect to whether conversion or dismissal is in the best interests of the creditors and the estate.  The parties should be prepared to address any issues that are relevant to that determination.  The Court will be interested in the usual economically oriented issues concerning the nature of a debtor's assets and the extent to which administration of the assets by a chapter 7 trustee is likely to produce a distribution to creditors.  In addition, because of the unusual nature of this case, the Court will also be interested in the feasibility of estate administration and the impact of the Debtor's conduct on the ability of a chapter 7 trustee to administer the assets.

### III.  CONCLUSION

      In accordance with the above discussion, it is

      **ORDERED** that the Court hereby finds that "cause" exists, under 11 U.S.C. § 1112(b), for conversion of this case to a case under chapter 7 or dismissal of the case.  It is further

      **ORDERED** that the Court will conduct a final hearing on **Tuesday, January 22, 2013, at 9:00 a.m.** in Courtroom C203, Byron G. Rogers U.S. Courthouse, 1929 Stout Street, Denver, Colorado, concerning the issue of whether conversion of this case to a case under chapter 7 or dismissal of the case is in the best interests of the creditors and of the bankruptcy estate.  The parties shall, on or before **January 15, 2013,** (a) deliver to opposing counsel, a list and photocopies of the proposed exhibits pre-marked for identification in accordance with Local Bankruptcy Rule 9070-1(a)(2)(C) and a schedule of witnesses who will be called as well as a schedule of witnesses who may be called, and (b) file with the Court only the list of exhibits and schedules of witnesses.  The original plus two copies of each exhibit shall be tendered to the

ORDER ON MOTION TO DISMISS
Case No. 12-31592 HRT

Court at the commencement of the hearing. The copies shall be used by the Court and the law clerk, and the original shall be used by the witnesses. Any party wishing to file a hearing brief in connection with this matter shall do so no later than **January 15, 2013.**

Dated this ___19th___ day of December, 2012.

BY THE COURT:

*Howard Tallman*
Howard R. Tallman, Chief Judge
United States Bankruptcy Court